# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| KIM VICKERS, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | CIVIL ACTION NO.: |
| v. ) | |
| ) | |
| ALABAMA HIGH SCHOOL ) | JURY DEMAND |
| ATHLETIC ASSOCIATION, ) | |
| ) | |
| DEFENDANT. ) | |

## COMPLAINT

### I.  INTRODUCTION

1. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Civil Rights Act of 1964, as amended, including the Civil Rights Act of 1991, 42 U.S.C. Section 1981a, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. 621 et seq., 42 USC §1981, and, to the extent that Defendant is considered a governmental body, 42 USC §1983.

### II.  JURISDICTION, VENUE AND ADMINISTRATIVE PREREQUISITES

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and

1

1343, 2201 and 2202. Venue is proper in the Middle District of Alabama, Northern Division under 28 U.S.C. §1391(b) and Title VII's venue provision, 42 U.S.C. § 2000e-5(f)(3).

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. Section 1981a, 42 U.S.C. Section 1981a and the ADEA. Plaintiff timely filed her original charge of discrimination on July 12, 2024 and her supplemental charge of discrimination on October 25, 2024, which was within 180 days of occurrence of the last discriminatory act. Plaintiff timely filed this lawsuit within 90 days of the receipt of her notice that her request for a Notice of Right to Sue had been sent to the U.S. Department of Justice for action on May 7, 2025 for each of her charges. Plaintiff also filed a third EEOC Charge on June 25, 2025, after Defendant terminated her. The Department of Justice issued Right to Sue notices on Plaintiff's original and supplemental EEOC Charges on July 17, 2025.

## III.   PARTIES

4. Plaintiff, Kim Vickers, is a 59-year-old white female citizen of the United States, a resident of the State of Alabama, and is over nineteen (19) years of

2

age.

5. Defendant, Alabama High School Athletic Association, (hereinafter "Defendant") is an employer within the meaning of that term as used in Title VII, 42 U.S.C. and Section 1981. At all times pertinent to the matters alleged herein, Defendant has employed fifteen (15) or more employees.

## IV. STATEMENT OF FACTS

6. Plaintiff, a 59-year-old white woman, began working for Defendant as Director of Publications on or around December 2014. In 2018 Plaintiff was promoted to Assistant Director and Eligibility Coordinator.

7. Defendant manages and governs all high school athletic eligibility and championship play for the state of Alabama.

8. Defendant covers 424 High Schools, 333 middle schools, and approximately 190,000 student athletes.

9. When Plaintiff filed her initial EEOC Charge on July 12, 2024, she had been in the position of Associate Executive Director for three years.

10. Generally, that Associate Executive Director job stands as a feeder job into the Executive Director job.

11. The previous Executive Director, Alvin Briggs, had worked in Plaintiff's Associate Executive Director job before being promoted to Executive

3

Director.

12. The Executive Director job was posted in late April 2024, and Plaintiff applied for that job and was interviewed on May 30, 2024 by a committee of seven board members.

13. Plaintiff was one of five people interviewed for the job.

14. The five interviewees were narrowed down to two men who then interviewed with the entire Central Board on June 6, 2024, and one of those men, Heath Harmon, was selected for the Executive Director position on that same day, June 6, 2024.

15. Plaintiff was substantially more qualified than Mr. Harmon because of her experience of being in the Associate Executive Director position.

16. Mr. Harmon was the principal of a high school at the time he was selected.

17. The current board president stated in a radio interview and made it clear that the type of candidate he was looking for was a "guy" that was not too old, not too young, middle aged, and did not have young children.

18. Mr. Harmon's hiring was announced on June 6, 2024.

19. Plaintiff was fifty-eight years old at the time.

20. The former executive director before Mr. Briggs, Steve Savarese, a male, did not retire until he was seventy.

21. Plaintiff had previously applied for the same position in 2021, and the position went to a male at that time.

22. There has never been a female in the Executive Director position since the founding of the association in 1921.

23. After Plaintiff filed her first EEOC Charge on July 12, 2024, Defendant began to retaliate against her in the terms, conditions, and privileges of her employment.

24. Because Harmon was less qualified than Plaintiff, she was required to explain to him the AHSAA's day-to-day operations and other basic knowledge that he needed to do the job, such as Defendant's bylaws, constitution, and procedures, further showing that he was not qualified for the position.

25. Plaintiff had 10 years of experience working with the day-to-day operations of the position and was promoted in 2018 and 2021 for such.

26. Because of Plaintiff's knowledge and experience, Plaintiff had to draft emails, memos, and letters, which was not part of her job description. Harmon had an administrative assistant who should have been performing those duties instead of Plaintiff.

27. After Plaintiff filed her first EEOC Charge, Harmon also excluded Plaintiff from meetings and interviews and demoted Plaintiff to her former position of

Director of Publications, the position she was hired into in 2014.

28. Defendant stated in its position statement to the EEOC that it removed Plaintiff from the Associate Executive Director position because she could not establish she was qualified for the position she had held because of her race.

29. In Particular, Defendant states as follows in its position statement to the EEOC:

> To show that she was qualified, Vickers must show that she satisfied her employer's objective qualifications. Vickers cannot refute that the Merger Act requires the Executive Director and the Associate Executive Director to be of different races based on the Merger Act. As such, Vickers could not meet the objective qualifications for the position of Associate Executive Director in light of the fact that a Federal Order required the Associate Executive Director to be African-American.

30. Defendant hired Brian McRae, a much younger African American male, to replace Plaintiff as Associate Executive Director.

31. Because McRae had little to no experience in athletic administration, he was substantially less qualified than Plaintiff for that job, if even qualified at all.

32. Defendant required Plaintiff to train McRae on the Associate Executive Director position that she had been demoted from.

33. Furthermore, Harmon hired McRae with the same pay rate Plaintiff was earning, despite his lack of experience.

6

34. After Plaintiff filed her second EEOC Charge on October 24, 2024, Harmon continued to discriminate and retaliate against her by excluding her from meetings, including committee meetings, interviews, government relations, and other parts of her job.

35. For instance, Plaintiff has been in charge of the Classification Committee since 2016. That committee has always had at least three members who were females. However, as reconstituted under Harmon, this committee did not include any women but was entirely composed of men.

36. Plaintiff told Harmon in his office that it was obvious that he was excluding women from anything that he considered "important."

37. On June 23, 2025, Harmon called Plaintiff into his office and told Plaintiff it was just not working out and that they needed to part ways.

38. Plaintiff asked Harmon if he was firing her, and Harmon said, "well, it is just not working out and we need to part ways."

39. Plaintiff asked Harmon if he was firing her because she had filed EEOC Charges. Harmon just stared at Plaintiff and refused to answer the question.

40. Since Plaintiff's termination, Defendant posted her job with the title of Assistant Director, which is a higher-level position than the Director of Publications position she had been demoted to in 2024.

41. Gender, race, age, and retaliation are the reasons behind Defendant's adverse employment actions, and Plaintiff's gender and race were motivating factors behind Defendant's adverse employment actions.

42. Defendant, by and through its agents, engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's federally protected rights.

43. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory damages is her only means of securing adequate relief.

44. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## V. CAUSES OF ACTION

**COUNT I – RACIALLY DISCRMINATORY DENIAL OF PROMOTION, DEMOTION AND TERMINATION -- TITLE VII AND 42 USC §1981**

45. Plaintiff brings this Count pursuant to Title VII of the Act of Congress known as the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., as amended, and 42 U.S.C. and Section 1981a. Plaintiff also brings this Count pursuant to

42 USC §1981.

46. Defendant discriminated against Plaintiff based on her race by taking the above adverse employment actions against her, including not promoting, demoting and terminating her.

47. Defendant's position statement to the EEOC includes direct evidence that Plaintiff's race was at least a motivating factor in one or more of these adverse employment actions.

48. Defendant's articulated reasons for these adverse employment actions described in the facts of this complaint are not legitimate; in the alternative, Plaintiff asserts a mixed-motive theory under Title VII, as even if Defendant had legitimate reasons for terminating her, race was at least a motivating factor in the adverse employment actions Defendant took against her. (Plaintiff's mixed motive theory of relief is pleaded solely under Title VII.)

49. Said discrimination was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

50. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory damages is her only means of securing adequate relief.

51. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

### COUNT II – SEX DISCRMINATORY DENIAL OF PROMOTION, DEMOTION AND TERMINATION -- TITLE VII

52. Plaintiff brings this Count pursuant to Title VII of the Act of Congress known as the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., as amended, and 42 U.S.C. and Section 1981a.

53. Defendant discriminated against Plaintiff based on her sex by taking the above adverse employment actions against her, including not promoting, demoting, disciplining and terminating her.

54. Defendant's articulated reasons for these adverse employment actions described in the facts of this complaint are not legitimate; in the alternative, Plaintiff asserts a mixed-motive theory under Title VII, as even if Defendant had legitimate reasons for terminating her, sex was at least a motivating factor in the adverse employment actions Defendant took against her.

55. Said discrimination was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

56. Plaintiff has no plain, adequate or complete remedy at law to redress the

10

wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory damages is her only means of securing adequate relief.

57. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

**COUNT III – AGE DISCRMINATORY DENIAL OF PROMOTION, DEMOTION AND TERMINATION -- ADEA**

58. Plaintiff brings this Count pursuant to the ADEA.

59. Plaintiff is over forty years old.

60. Defendant discriminated against Plaintiff on the basis of age by taking adverse employment actions against her which affected the terms and conditions of her employment, including disciplining and terminating Plaintiff because of her age.

61. Other significantly younger employees have engaged in the conduct Defendant alleges as the reasons for terminating Plaintiff, but Defendant did not terminate those younger employees.

62. Plaintiff has been replaced by a younger employee.

63. But for Plaintiff's age, she would have been promoted, would not have been

demoted and would not have been terminated.

64. Defendant has failed to articulate a legitimate, nondiscriminatory reason for the adverse employment actions it took against Plaintiff.

65. Said discrimination was done willfully and intentionally.

### COUNT IV – RETALIATION UNDER TITLE VII AND SECTION 1981 AND THE ADEA

66. Plaintiff brings this Count pursuant to Title VII of the Act of Congress known as the Civil Rights Act of 1964 42 U.S.C. Section 2000e et seq., as amended, 42 U.S.C. Section 1981(a) and 42 U.S.C. Section 1981.

67. Plaintiff engaged in protected activity when she complained of race and gender discrimination by filing two EEOC Charges.

68. After Plaintiff complained of discrimination and filed EEOC Charges as detailed above, Defendant retaliated by taking materially adverse employment actions against her, including demoting and terminating her.

69. But for Plaintiff's engagement in protected activity, Defendant would not have taken these materially adverse employment actions against her.

70. Said retaliation was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

71. Plaintiff has no plain, adequate, or complete remedy at law to redress the

wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory damages is her only means of securing adequate relief.

72. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiff as secured by Title VII, as amended by 42 U.S.C. Section 1981a, 42 U.S.C. Section 1981 and the ADEA.

2. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII as amended by 42 U.S.C. §1981a, and the ADEA.

3. Enter an Order requiring Defendant to make Plaintiff whole by awarding her reinstatement into the position she would have held absent the discrimination

and retaliation stated in the complaint, front pay if reinstatement into that position is not possible, back pay (plus interest), compensatory damages, punitive damages, liquidated damages for Defendant's violations of the ADEA, nominal damages, loss of benefits including retirement, pension, seniority, and other benefits of employment.

4. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**.

Respectfully submitted,

/s/ Jon C. Goldfarb
Jon C. Goldfarb asb-5401-f58j
L. William Smith asb-8660-A61S
Christina M. Malmat asb-1214-y44q
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB LLC
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500